ALCO STANDARD CORPORATION, an Ohio Corporation, Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY, a United States Corporation, and Westinghouse Electric Corporation, a Pennsylvania Corporation, Defendants.

Civ. No. 77–2513.

United States District Court, W. D. Tennessee, W. D.

April 5, 1978.

Roy Keathley, Heiskell, Donelson, Adams, Williams & Kirsch, Memphis, Tenn., for plaintiff; Haight, Hofeldt, Davis & Jambor, Chicago, Ill., of counsel.

John F. Lynch, George M. Medwick, Arnold, White & Durkee, Houston, Tex., Robert M. Johnson, Canada, Russell & Turner, Memphis, Tenn., for Westinghouse.

Herbert S. Sanger, Jr., Gen. Counsel, Charles A. Wagner III, Assoc. Gen. Counsel, Don O. Whitehead, Nicholas A. DellaVolpe, Attys., Tennessee Valley Authority, Knoxville, Tenn., for TVA.

## ORDER DISMISSING ALL CLAIMS AS TO DEFENDANT WESTINGHOUSE

BAILEY BROWN, Chief Judge.

This is a patent infringement action brought by plaintiff Alco Standard Corporation against the Tennessee Valley Authority and Westinghouse Electric Corporation. The cause is presently before the court on the motion of Westinghouse to dismiss the various claims asserted against it for failure to state a claim, improper venue, and lack of subject matter jurisdiction. This case presents novel questions of construction regarding Section 19 of the Tennessee Valley Authority Act, 16 U.S.C. § 831r, and the patent venue statute, 28 U.S.C. § 1400(b).

Alco alleges in its complaint that it is the owner of a patent for an invention in ultrasonic bore inspection systems. Apparently, such systems are used to detect flaws in the large turbine rotors present in electric generating facilities.

Alco claims that TVA, in conjunction with Westinghouse, has infringed the patent and that therefore TVA is liable to Alco for "reasonable compensation" under Section 19 of the TVA Act.

Alco also claims that Westinghouse has committed acts of infringement in conjunction with TVA and also with others, and that Westinghouse has engaged in common law unfair competition. As to Westinghouse, Alco seeks injunctive relief against continued patent infringement and unfair competition, treble damages for patent infringement, and compensatory and punitive damages for unfair competition.

Westinghouse has established by affidavit that it has conducted ultrasonic bore inspections within the State of Tennessee only for TVA. Alco does not contend to the contrary. It is Westinghouse's contention that Section 19 provides an exclusive remedy against TVA where a patented invention is used in work for TVA, and that the complaint therefore fails to state a claim on which relief may be granted against Westinghouse, insofar as work done by Westinghouse for TVA is concerned. Additionally, Westinghouse contends that since it cannot be held liable for patent utilization in work for TVA, and since it has conducted ultrasonic bore inspections in Tennessee only for

TVA, it has committed no act of infringement within this district. Therefore, Westinghouse argues that venue is improper as to the claims of patent infringement not involving work for TVA. Finally, it is Westinghouse's position that if the foregoing propositions are correct, it would be an abuse of this court's discretion to exercise pendent jurisdiction over the unfair competition claims asserted against Westinghouse under state law.

## SECTION 19 OF THE TVA ACT

Section 19 of the Tennessee Valley Authority Act, codified at 16 U.S.C. § 831r, provides in full:

§ 831r. Patents; access to Patent Office and right to copy patents; compensation to patentees.

The Corporation, as an instrumentality and agency of the Government of the United States for the purpose of executing its constitutional powers, shall have access to the Patent Office of the United States for the purpose of studying, ascertaining, and copying all methods, formulae, and scientific information (not including access to pending applications for patents) necessary to enable the Corporation to use and employ the most efficacious and economical process for the production of fixed nitrogen, or any essential ingredient of fertilizer, or any method of improving and cheapening the production of hydroelectric power, and any owner of a patent whose patent rights may have been thus in any way copied, used, infringed, or employed by the exercise of this authority by the Corporation shall have as the exclusive remedy a cause of action against the Corporation to be instituted and prosecuted on the equity side of the appropriate district court of the United States, for the recovery of reasonable compensation for such infringement. The Commissioner of Patents shall furnish to the Corporation, at its request and

without payment of fees, copies of documents on file in his office: *Provided,* That the benefits of this section shall not apply to any art, machine, method of manufacture, or composition of matter, discovered or invented by such employee during the time of his employment or service with the Corporation or with the Government of the United States.

The court is unaware of any previous judicial decision construing Section 19, although oblique references to this portion of the TVA Act may be found in two reported opinions.[1] We are aided, however, in the construction of this statutory provision by its legislative history and by reference to a similar statute, 28 U.S.C. § 1498(a) (previously codified at 35 U.S.C. § 68).

At the outset, it is necessary to determine whether Section 19 is limited in application to only a few of TVA's legitimate statutory purposes. Alco does not seriously contend such a construction should be adopted, and in fact relies on Section 19 in asserting its claim against TVA. The suggestion has been made nevertheless that the authority to use patented inventions contained in Section 19 is limited in terms to those inventions related to production of fixed nitrogen, fertilizer, or hydroelectric power. Thus, under this construction, Section 19 would not apply to use of patented inventions in connection with steam generating facilities.[2]

This argument has some validity if the statute is to be construed without regard to Congressional intent as manifested in its legislative history. However, it is the opinion of the court that the Congress intended to grant TVA a much broader authority to use patented technology and equipment, although there was a failure to express such intent clearly on the face of the statute.

The House report on the bill contains the following pertinent comments:

1. See *United States v. General Electric Co.,* 209 F.Supp. 197 (E.D.Pa.1962); *Ramsey v. United Mine Workers of America,* 27 F.R.D. 423 (E.D. Tenn.1961).

2. It is assumed by both parties that TVA's steam generating facilities as well as its hydroelectric facilities are involved here.

### USE OF PATENT RIGHTS

Much hysterical opposition has been expressed for several years to this feature of the bill. It is recklessly charged that it authorizes the confiscation and invasion of private property rights. Such argument entirely overlooks the fundamental principles involved. The monopoly of a patent right is a special privilege conferred by the Government. The inventor has no such monopoly by the law of nature, nor by the common law, but the Constitution of the United States authorizes the Congress to encourage inventions and discoveries by giving, for a limited period, a monopoly to the inventor or discoverer. But it has always been held by the Congress and the courts that the sovereign which confers to one citizen such exclusive right, as against all other citizens, itself has certain rights in the monopoly privilege. It would be a strange situation for a government to confer such right of monopoly, and then, in the hour of the government's necessity, find itself held at bay by the monopolist. This reservation of right to the Government is analogous to the right of eminent domain. It is inherent in sovereignty itself.

Therefore, it is not surprising that we find the general law of the United States expressed in the United States Code, in title 35, section 68, *that the United States can use any invention for which a patent has been issued,* and that the sole and exclusive remedy for any claim of damages by the owner of the patent shall be a suit in the United States Court of Claims. But no such right to bring such suit belongs to a person who made the invention while in the employ of the United States. This law was enacted June 25, 1910, and the section of the pending bill [Section 19] is merely a declaration that the Authority is the agent of the United States in carrying out its constitutional powers. [Emphasis added.] [H.R.Rep.No.48, 73rd Cong., 1st Sess. 9–10 (1933)].

■ This court concludes that it was the intent of Congress in adopting Section 19 of the TVA Act to grant TVA a right to use patented inventions equal in scope to the right then enjoyed by other agencies of the federal government, and to provide compensation to the patentee equivalent to that available under 35 U.S.C. § 68 [now codified at 28 U.S.C. § 1498(a)].[3]

Such conclusion is buttressed by the observation that any other construction would probably leave patentees such as Alco without any remedy, where TVA used an invention for a purpose found outside the scope of Section 19. The patentee could not effectively sue a contractor such as Westinghouse in such a case, since 28 U.S.C. § 1498(a) provides an action against the United States in the Court of Claims, for the recovery of reasonable compensation, as the exclusive remedy in such circumstances. Moreover, the § 1498(a) suit could not be maintained against the government, since the Court of Claims has no jurisdiction over "suits against, or founded on actions of, the Tennessee Valley Authority." 28 U.S.C. § 1491. The court does not believe such an anomalous result was intended by the Congress, nor will we lightly adopt a construction of Section 19 which would raise serious questions as to its constitutionality under the fifth amendment. Cf. *Richmond Screw Anchor Co. v. United States,* 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928).

It is additionally necessary to determine under what circumstances, if any, Section 19 would apply to the use of a patented invention by an independent contractor, such as Westinghouse, working for TVA. The statute does not expressly address itself to this issue. The court concludes, however, that the factual allegations of the complaint place this case within the ambit of Section 19.

■ The terms of the TVA Act indicate that TVA does have the authority to use independent contractors in the exercise of its statutory powers. 16 U.S.C. §§ 831b, 831c(d). It is reasonable to assume that the Congress did not intend to limit the applicability of Section 19 to those instances where

---

**3.** Alco does not claim that steam generation is outside the scope of TVA's statutory powers.

TVA chose to act directly rather than through an independent contractor.

■ This view is supported by the legislative history of Section 19, noted above, indicating that the Congress intended to model Section 19 after the statutory scheme of compensation then in effect for patentees whose inventions were utilized by other federal agencies. The history of that statutory scheme is pertinent to the problem now before us, and we assume that Congress was aware of this history when it adopted Section 19.

In 1910, the Congress adopted the statute which was eventually codified at 35 U.S.C. § 68, and later recodified at 28 U.S.C. § 1498(a). Act of June 25, 1910, ch. 423, 36 Stat. 851. The statute provided a patentee with a cause of action against the United States in the Court of Claims, to recover reasonable compensation for the unlicensed use of a patented invention.

Subsequently, the Supreme Court determined in *William Cramp & Sons Ship & Engine Building Co. v. International Curtis Marine Turbine Co.*, 246 U.S. 28, 38 S.Ct. 271, 62 L.Ed. 560 (1918) that the Act of 1910 did not preclude a patent infringement action against an independent contractor for the government, based on the contractor's use of a patented turbine engine in ships built for the Navy. The Court held that the Act of 1910 did not create a license for a government contractor to use patented inventions in the performance of government contracts. The Court was careful to distinguish its previous decision in *Crozier v. Fried. Krupp Aktiengesellschaft*, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771 (1912), holding that where an agency or officer of the United States uses a patented invention for a governmental purpose, the power of eminent domain and the Act of 1910 effectively create a license for such use.

The Congress reacted almost immediately to the *William Cramp* decision, by amending the Act of 1910 to include the unlicensed use or manufacture of a patented invention "*by or for* the United States." [Emphasis added.] Act of July 1, 1918, ch. 114, 40 Stat. 704, 705. The Supreme Court

recognized the effect of such amendment in *Richmond Screw Anchor Co. v. United States,* supra:

> The purpose of the amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word "entire" emphasizes the exclusive and comprehensive character of the remedy provided.

275 U.S. at 343, 48 S.Ct. at 197.

This court believes the Congress must have intended the same effect for Section 19, which, as we have previously noted, was adopted with 35 U.S.C. § 68 in mind.

■ This does not mean that Section 19 of the TVA Act provides a blanket immunity from patent infringement actions for an independent contractor working under a contract with TVA. Here again, we may draw on the statutory scheme in effect for the use of patented inventions by or for other federal agencies, in determining the proper construction of Section 19.

The Congress in 1951 again amended the statute of 1910 (then codified at 35 U.S.C. § 68) to provide:

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

Act of October 31, 1951, ch. 655, § 50(c), 65 Stat. 727. It would appear that in circumstances where the government's authorization and consent are lacking, the statute is rendered inapplicable by the terms of this amendment. See *Carrier Corp. v. United States,* 534 F.2d 244, 208 Ct.Cl. 678 (1976); *Croll-Reynolds Co. v. Perini-Leavell-Jones-*

*Vinell,* 399 F.2d 913 (5th Cir. 1968), cert. den. 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).

■ This court holds that Section 19 of the TVA Act applies to an independent contractor's use of a patented invention only where such use is for TVA, and that such use should be deemed "for TVA" only where the authorization or consent of TVA is demonstrated.

■ Applying this construction of Section 19 to the case at bar, the court can only conclude that Alco has failed to state a claim against Westinghouse insofar as it is alleged that Westinghouse used Alco's patented invention in its ultrasonic bore inspections for TVA. As to the TVA inspections, Alco alleges only that Westinghouse infringed Alco's patent by using ultrasonic bore inspection systems embodying the patented invention "in conjunction with defendant Tennessee Valley Authority." We hold that use of a patented invention "in conjunction with" TVA would necessarily constitute use with the authorization or consent of TVA. There is no allegation that the use of the Alco patent by Westinghouse was not authorized by TVA.

■ Accordingly, Alco's exclusive remedy with regard to the inspections for TVA is the claim for reasonable compensation asserted against TVA in this cause under Section 19. Alco has no cause of action against Westinghouse for these inspections.

## VENUE AS TO WESTINGHOUSE INSPECTIONS FOR PERSONS OTHER THAN TVA

Venue in patent infringement actions is governed by 28 U.S.C. § 1400(b), which provides that

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

*Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). In asserting that venue is proper in this district, Alco alleges only that Westinghouse has a regular and established place of business here, and has committed acts of infringement within the district. No allegation is made that Westinghouse is a resident of the district, and indeed, the record shows that Westinghouse could not be a resident of this district for § 1400(b) purposes, since it is incorporated in the State of Pennsylvania. *Fourco Glass Co. v. Transmirra Products Corp.,* supra.

As we have noted earlier in this opinion, it is now established that the ultrasonic bore inspections which allegedly constitute acts of infringement were performed by Westinghouse in this district only for TVA. The court has concluded that the allegations of the complaint do not state a cause of action against Westinghouse as to the TVA inspections, because of the impact of Section 19 of the TVA Act. This leaves us with the question whether the TVA inspections may nevertheless be regarded as acts of infringement sufficient to establish § 1400(b) venue as to the alleged inspections in other districts for persons other than TVA.

Westinghouse contends that the TVA inspections cannot be deemed acts of infringement for § 1400(b) purposes. Westinghouse relies on the definition of patent infringement found in 35 U.S.C. § 271(a):

> Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

It is the contention of Westinghouse that Section 19 authorizes use of patented inventions in the circumstances presented here, and that the Westinghouse inspections for TVA accordingly cannot be viewed as acts of patent infringement under 35 U.S.C. § 271(a) or under 28 U.S.C. § 1400(b).

On the other hand, Alco contends that by its terms Section 19 treats use of a patented invention for TVA as an act of infringement. We note that Section 19 does state that a patent owner whose rights have been "copied, used, infringed, or employed" under Section 19 shall have a cause of action

against TVA to recover reasonable compensation "for such infringement." It is Alco's position that even if Alco has no cause of action against Westinghouse arising out of the TVA inspections, such inspections do constitute acts of infringement for venue purposes.

The question whether a use of a patented invention which falls within the protective umbrella of Section 19 may nevertheless establish a basis for venue as to similar uses unprotected by Section 19 has, of course, not been decided previously.

■ On consideration, this court holds that an act protected under Section 19 cannot constitute an act of infringement for purposes of establishing venue under 28 U.S.C. § 1400(b).

The argument that a contrary ruling would serve the ends of judicial economy and efficiency is not compelling. It is true that similar issues would often be raised in an action for reasonable compensation brought against TVA under Section 19, and in a patent infringement action against a TVA contractor also alleged to have committed acts of infringement in the course of non-TVA work. This would probably be true in the present case, as counsel have suggested that the issues of validity and infringement would be raised by TVA and by Westinghouse. However, Section 19 expressly provides for trial on the equity side of the court, while both Alco and Westinghouse would be entitled to demand a jury on the issues of validity and infringement, and perhaps on other issues as well, raised in regard to the infringement claims against Westinghouse. Moreover, trial of the independent claims against Westinghouse together with the Section 19 claims against TVA would entangle all the parties in unnecessarily complex and protected proceedings, since additional issues would not be common to both the claims against TVA and against Westinghouse.

Additionally, the court must keep in mind the protective aspect of Section 19. A TVA contractor should not be prejudiced in defending a patent infringement action based on alleged acts of infringement not involving TVA by requiring the contractor to defend the suit in a district where only TVA work has been performed. Cf. *Richmond Screw Anchor Co. v. United States,* supra (upholding Congressional intent to protect government contractors through the legislation on which Section 19 was modeled).

■ Finally, the court finds the construction of § 1400(b) advanced by Westinghouse more reasonable than the construction advanced by Alco. Since we have concluded that Section 19 authorizes the use of patented inventions by TVA, or by TVA contractors working with TVA's authorization and consent, work by a TVA contractor which falls within the scope of Section 19 protection cannot constitute an act of infringement within the meaning of 35 U.S.C. § 271(a). The court holds that the meaning of "acts of infringement" in § 1400(b) must be determined by reference to 35 U.S.C. § 271(a). Accordingly, an act within the scope of Section 19 protection cannot be deemed an "act of infringement" under § 1400(b).

## UNFAIR COMPETITION CLAIMS

In addition to the patent infringement claims, Alco has asserted unfair competition claims arising under state law against Westinghouse.

■ It is the opinion of the court that the sound exercise of discretion requires dismissal of these pendent state claims, since the federal patent claims asserted against Westinghouse must be dismissed at this early stage of the litigation for failure to state a claim and improper venue. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ The court also concludes that 28 U.S.C. § 1338(b) does not alter this result. It may be true that in some instances a patent claim against one party gives rise to § 1338(b) jurisdiction over a related unfair competition claim asserted against another party. However, this court believes that a Section 19 claim against TVA is not a "patent claim" for purposes of establishing § 1338(b) jurisdiction over unfair competi-

tion claims asserted against a TVA contractor. To hold otherwise would be inconsistent with our construction of § 1400(b) in the context of Section 19. Moreover, since Alco's patent infringement claims against Westinghouse cannot be tried in this district, a decision to allow assertion of Alco's unfair competition claims against Westinghouse in this action would not advance the § 1338(b) purpose of avoiding piecemeal litigation.

CONCLUSION

For the reasons stated above, Alco's patent infringement claims against Westinghouse for ultrasonic bore inspections performed in conjunction with TVA are dismissed for failure to state a claim upon which relief may be granted. Alco's remaining patent infringement claims against Westinghouse are dismissed for improper venue. Alco's pendent unfair competition claims against Westinghouse are also dismissed.

It is so ORDERED.