**John E. MAGEE, Plaintiff,**

v.

**ESSEX–TEC CORPORATION, Defendant.**

**Civ. A. No. 86–543 LON.**

United States District Court, D. Delaware.

Dec. 13, 1988.

Mary W. Bourke of Connolly, Bove, Lodge & Hutz, Wilmington, Del. (S.C. Yuter of Briarcliff Manor, New York City, of counsel), for plaintiff.

Douglas E. Whitney and Donald F. Parsons of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (John K. McCulloch of Learman & McCulloch, Saginaw, Mich., of counsel), for defendant.

LONGOBARDI, District Judge.

Pursuant to 28 U.S.C. § 1404(a), Defendant has moved to transfer this lawsuit, Docket Item ("D.I.") 47, to the United States District Court for the Central District of California.

Title 28, section 1404(a) of the United States Code provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As an initial matter, for a transferee district to be one where a civil action "might have been brought", the moving party must demonstrate that venue is proper in the transferee district and the transferee court could exercise *in personam* jurisdiction over all parties. *Hoffman v. Blaski,* 363 U.S. 335, 343–44, 80 S.Ct. 1084, 1089–90, 4 L.Ed.2d 1254 (1960); *Shutte v. Armco Steel Corporation,* 431 F.2d 22, 24 (3rd Cir.1970).

## VENUE

Venue in suits for patent infringement is governed solely and exclusively by 28 U.S.C. § 1400(b) [1] which provides: "Any

1. *Stonite Products Co. v. Melvin Lloyd Co.,* 315 U.S. 561, 563, 62 S.Ct. 780, 781, 86 L.Ed. 1026 (1942) (venue for patent infringement suits under 28 U.S.C. § 1400(b) is not supplemented by what is now 28 U.S.C. § 1392(a), which permits a suit against multiple defendants residing in

civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." In an action for patent infringement, section 1400(b) provides two alternatives to establish venue. 1 *Moore's Federal Practice* 0.144[9] at 1503. One alternative is to sue in the judicial district where the defendant "resides." *L.D. Schreiber Cheese Co. v. Clearfield Cheese Co.*, 495 F.Supp. 313, 317 (W.D.Pa.1980). In the case of a corporation not subject to the general corporation venue statute, 28 U.S.C. § 1391(c), it is a "resident" of only the state of its incorporation. *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226, 77 S.Ct. 787, 790, 1 L.Ed.2d 786 (1957). Although its sole place of business is Carpinteria, California, (Kaufman affidavit, D.I. 47, Exhibit A, ¶ 3), Essex does not contend that venue is proper in the United States District Court for the Central District of California by virtue of the residence prong of section 1400(b) because as a Delaware corporation Essex is a resident of the State of Delaware.

The second alternative of section 1400(b) to establish venue contains two requirements: (1) that the defendant has committed acts of infringement in the district; and (2) that the defendant has a regular and established place of business in the district. 1 *Moore's Federal Practice* 0.144[9] at 1509 n. 38. With respect to the first requirement, the "acts of infringement" must be determined by reference to the definition of patent infringement in 35 U.S.C. § 271(a). *Alco Standard Corp. v. Tennessee Valley Auth.*, 448 F.Supp. 1175, 1181 (W.D.Tenn.1978). Title 35, section 271(a) of the United States Code provides that patent infringement occurs whenever one "without authority makes, uses or sells any patented invention within the United States during the term of the patent therfor." It

is well established that performance of only *one* of the three statutorily enumerated activities of manufacture, use or sale constitutes patent infringement. *See, e.g., Roche Products v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 861 (Fed.Cir.1984). Thus, an "act of infringement" may consist of either the manufacture, use or sale of the patented invention. 1 *Moore's Federal Practice* 0.144[9] at 1509–10 n. 39. Essex argues that venue is proper in the Central District of California because "all of the alleged infringing elevator security systems equipment made by Essex were manufactured in Carpinteria, California." D.I. 47 at 6 (Kaufman affidavit, Exhibit A, ¶ 16). Essex's manufacture of the alleged infringing device constitutes an "act of infringement" sufficient to satisfy the first element of the test for venue under section 1400(b). In his brief, Plaintiff does not raise an argument on this issue.

The second element of section 1400(b) is the requirement that the Defendant Essex Corporation maintain "a regular and established place of business" in the Central District of California. A regular and established place of business has been described as a place where a party is "engaged in carrying on in [a] continuous manner a substantial part of its ordinary business." *IPCO Hospital Supply v. Les Fils D'Auguste*, 446 F.Supp. 206, 208 (S.D.N.Y. 1978). Thus, where a defendant has a fixed business location evidenced by a business phone, letterheads and, in fact, carries on activities connected with the business at that location, then it has a regular and established place of business. *See Federal Electric Products Co. v. Frank Adam Electric Co.*, 100 F.Supp. 8 (S.D.N.Y.1951); *see also* 1 *Moore's Federal Practice* 0.144[9].

In the instant case, the Defendant Essex Corporation has carried its burden of proof on the question of whether its business activities in the Central District of Califor-

different districts in the same state to be brought in any such district; *Fourco Glass v. Transmirra Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957) (definition of corporate residence under the general corporation venue statute, 28 U.S.C. § 1391(c), does not

apply to patent infringement actions governed by 28 U.S.C. § 1400(b)). *See also Brunette Machine v. Kockum Industries*, 406 U.S. 706, 713–14, 92 S.Ct. 1936, 1940–41, 32 L.Ed.2d 428 (1972) (reaffirming the results in *Stonite* and *Fourco*).

nia are sufficient to give rise to venue. According to the affidavit of Mr. Peter Kaufman, Chairman of the Board of Essex Corporation, Essex's place of business has been located solely in Carpinteria, California. D.I. 47, Exhibit A, ¶ 3. Therefore, Essex has satisfied both elements of the test to establish proper venue in the Central District of California had it been the only Defendant at the time the complaint was filed.

█ Venue may not have been proper in the Central District under section 1400(b) when there were four defendants in the case because Essex was the only one with a regular and established place of business in the district. However, when a defendant is no longer a party to the suit, it has been held that "a court is not required to confine its venue considerations to the facts of the case as they existed at the time of the complaint." *In Re Fine Paper Antitrust Litigation*, 685 F.2d 810, 819 (3rd Cir. 1982).[2] In *In Re Fine Paper*, the defendants as to whom venue would have been improper in the transferee district had settled with the plaintiff and were no longer parties at the time of the transfer. *Id.* Relying on *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), the appellants in *In Re Fine Paper* claimed that section 1404(a)'s phrase "where it might have been brought" should be interpreted "to preclude a transfer notwithstanding the prior settlement of all parties as to whom venue in the transferee district would have been improper." *In Re Fine Paper*, 685 F.2d at 819. The Third Circuit refused to read *Hoffman* and section 1404(a) "to be so grudging." *Id.*

In *Hoffman*, the defendants themselves requested the transfer and consented to proceed in a district in which they could have objected to venue at the outset of the litigation. *Hoffman*, 363 U.S. at 340–41, 80 S.Ct. at 1088. The United States Supreme Court held that the power to transfer under section 1404(a) does not depend "upon the wish or waiver of the defendant" and concluded that the defendants may not establish venue in the transferee district by merely waiving its possible objections to venue. *Hoffman*, 363 U.S. at 343, 80 S.Ct. at 1089. The Third Circuit stated in *In Re Fine Paper* that *Hoffman* only "precludes transfer over a plaintiff's objections to a district in which venue would be improper as to a defendant who remained a party to the action." *In Re Fine Paper*, 685 F.2d at 819. In *In Re Fine Paper*, the parties as to whom venue in the transferee district would have been improper had settled and were no longer parties at the time of the transfer. Accordingly, the Third Circuit held that "a party's settlement of his portion of the action cures any objection to venue in the transferee district with respect to that party." *Id.*

Thus, this Court is not required to confine its venue consideration to the facts as they existed at the time of the complaint. *Id.; see also Fairfax Dental Ltd. v. S.J. Filhol Ltd.*, 645 F.Supp. 89, 91 (E.D.N.Y. 1986) (plaintiff in patent infringement suit allowed to transfer action after two defendants settled where venue was proper in transferee district for all named defendants who were still parties to the suit); *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 447 F.Supp. 381, 383 (N.D.Okla.1978) (court had authority in civil action for damages to transfer suit to another district after one of the defendants which could not have been served in transferee district settled with plaintiff).

As previously discussed, this action "might have been brought" against Essex in the District Court for the Central Dis-

---

**2.** For example, in suits against multiple defendants, transfer of the case is proper only to a district in which all of the defendants would have been amenable to process and in which venue was proper. *Hoffman*, 363 U.S. at 343–44, 80 S.Ct. at 1089–90. It is not uncommon, however, for lower courts to circumvent the *Hoffman* test by permitting the defendants to sever and transfer those claims which could have been brought originally in the court to which transfer is sought while retaining those claims against defendants where the transferee court lacked in personam jurisdiction. *See Wyndham Associates v. Bintliff*, 398 F.2d 614, 618–19 (2d Cir.1968) (venue defects as to a party whose portion of the action has been severed do not bar transfer of the remainder of the action); *See also* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3845 at 351–52 n. 27 (1976).

trict of California if Essex had been the only Defendant at the time the complaint was filed. However, at the time the complaint was filed, Essex was one of four Defendants and venue was not available in California for the other three Defendants. On December 4, 1987, this action was dismissed as to all Defendants except Essex. D.I. 43. Because Essex is the sole party remaining in the case at the time of the requested transfer, venue is proper in the Central District under section 1400(b). As one court has noted: "It would elevate form over substance to forbid a transfer, sought by the plaintiff, on the basis of an objection—that the suit could not originally have been brought in the transferee district—that logically should be raised by defendants no longer in the case." *Fairfax Dental*, 645 F.Supp. at 92 (citing *In Re Fine Paper*, 685 F.2d at 819). It would, therefore, not constitute an abuse of this Court's discretion to transfer the case under section 1404(a) to the United States District Court for the Central District of California.

### MOTION TO TRANSFER

██ Since this Court unquestionably has the authority to transfer this action, the only remaining issue is whether the Court in its sound discretion should do so after considering the statutory requirements of the convenience of the parties and witnesses and the interest of justice.

In considering a motion to transfer, a plaintiff's choice of forum is a "paramount consideration in any determination of a transfer request, and that choice ... should not lightly be disturbed." *Shutte*, 431 F.2d at 25. Additionally, the moving party has the burden of demonstrating that a balancing of proper interests weighs in favor of transferring the lawsuit. *Id.* When, however, the plaintiff has brought suit in a forum which is not its "home turf", and which has no connection with the facts or subject matter of the lawsuit, the convenience to the plaintiff in his choice of

forum is not as great as it would be if the plaintiff were litigating at or near its residence, its principal place of business or the site of the activities of the lawsuit. *Pall Corp. v. Bentley Laboratories Inc.*, 523 F.Supp. 450, 452 (D.Del.1981). Thus, when the plaintiff is not litigating in his "home turf", it is less difficult for the defendant to meet its burden of proof in demonstrating that the balance of factors tips in favor of the transfer. *Krupp Intern., Inc. v. Yarn Industries, Inc.*, 615 F.Supp. 1103 (D.Del.1985); *Pall Corp.*, 523 F.Supp. at 452; *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822–23 (D.Del. 1976); *Burroughs v. Wellcome Co. v. Giant Food, Inc.*, 392 F.Supp. 761, 763 (D.Del.1975).

In support of its motion to transfer, Essex points out that the Plaintiff is not a resident of Delaware and this action has no connection at all to Delaware other than the fact that when the complaint was originally filed, all four named Defendants were Delaware corporations. D.I. 47 at 5. Furthermore, Plaintiff has made no allegation that any documentary evidence, witnesses or any other tangible evidence has any connection to the State of Delaware. Although the Plaintiff contends that some of Essex's customers may have contributed to the alleged patent infringement in Delaware by sale of the accused elevator systems security components, D.I. 48 at 11 n. 2, it has offered no evidence to support its claim that the case has a connection with the State of Delaware.[3]

In contrast, the affidavit of Peter Kaufman establishes that Essex's sole place of business is and has been located in Carpinteria, California (D.I. 47, Exhibit A, ¶ 3); that all of its officers are residents of California (*Id.*, ¶¶ 1, 13); and that its sole manufacturing plant is also located in Carpinteria, California (*Id.*, ¶ 16). None of the alleged infringing elevator security system components were manufactured in Delaware. *Id.*, ¶ 17. Under these facts, where the Plaintiff's choice of forum in Delaware is neither connected with Plain-

---

**3.** Defendant maintains, however, that "all of the sales of elevator security equipment manufactured by Essex have been made through an independent sales representative, Robert Trundel, who is a resident of California." D.I. 47, Exhibit A, ¶ 17.

tiff's residence nor Essex's place of business or the site of the alleged acts of infringement, the Defendant Essex's burden of showing sufficient inconvenience with the present forum in favor of the Central District of California becomes less difficult.

## CONVENIENCE OF PARTIES AND WITNESSES

In considering the balance of convenience between the parties, it is abundantly clear that the California court is a much more convenient forum for Essex and its probable trial witnesses than this Court. As previously noted, Essex's sole place of business is located in California. All of its officers, key employees and records are also located in California and all of the alleged acts of infringement occurred in the proposed transferee court's forum. The Defendant also points out that all the corporate records relating to the alleged patent infringing activities by Essex are located in California. D.I. 47, Exhibit A, ¶ 21.

A factual pattern similar to this case occurred in *Pall Corp.*, 523 F.Supp. 450, in which a suit for patent infringement was transferred from the District Court in Delaware to the Central District Court in California. In *Pall*, the defendant was a Delaware corporation with its principal place of business in Irvine, California, and the plaintiff was a holding company incorporated in New York. *Id.* at 452. The plaintiff's activities relating to the patents at issue in the suit were conducted at Glen Cove, New York, and the plaintiff conducted no business activities in Delaware. *Id.* On the other hand, all of the research and development facilities, personnel, corporate offices and employees and manufacturing plant were located in Irvine and none of the allegedly infringing devices manufactured by the defendant were sold in Delaware. *Id.* In granting the defendant's motion to transfer, the district court noted with respect to the question of the convenience of

the parties and witnesses: "Undoubtedly, there would be some additional expense [for the plaintiff] in traveling to California and shipping records there for trial, but the difference in such expenses in multipatent litigation would be insignificant compared to the overall costs of such litigation wherever tried." *Id.* at 453. In the present case, all of the witnesses,[4] however, are key employees of Essex whose prolonged absence would cause severe financial hardship to the Defendant which could threaten its existence. D.I. 47, Exhibit A, ¶ 28. In addition, their absence from work and their travel expenses to Wilmington would be greater than if they could attend trial in California. *Id.*, ¶¶ 24–27. It is appropriate for the Court to consider "the prolonged absence" of proposed witnesses in assessing the convenience of the parties and witnesses. *Clopay Corp. v. Newell Companies, Inc.*, 527 F.Supp. 733, 736 (D.Del. 1981).

On the other hand, the evidence in the record indicates that transferring the suit to the Central District of California would not substantially inconvenience the Plaintiff. In fact, the only allegation of inconvenience to the Plaintiff's parties and witness offered by the Plaintiff is that it would be "grossly inconvenient" for Magee and his trial counsel, S.C. Yuter, to be forced to travel to Los Angeles in order to litigate this case instead of to Wilmington from their respective residences in Connecticut and New York City. D.I. 48, at 16. Nevertheless, the Court finds that this cross-country travel would not substantially inconvenience the Plaintiff or his attorney because the record indicates that Mr. Magee is the sole Plaintiff in the suit *and* he is the only witness scheduled to be called at trial. *Id.; see, e.g., Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043, 1047 (3rd Cir.1973) (convenience of counsel is not a factor to be considered in determining whether a case should be transferred under 28 U.S.C. section 1404(a)).

---

4. Defendant plans to call Messrs. Burgess, Hickox, Moore, Trudel, Kaufman, Echols and Mrs. Diaz. Defendant considers their testimony crucial with respect to the construction and operation of the allegedly infringing devices manufactured by Essex. D.I. 47, Exhibit A, ¶ 21.

Plaintiff's counsel also contends that at age seventy-six, it would be "less stressful" for Mr. Magee to litigate this action in Delaware rather than in California because he has a history of stroke and heart disease. D.I. 48 at 13. Nevertheless, Plaintiff has not submitted any medical evidence in the record nor has it even been suggested that transferring this case would require Plaintiff either to drop the case or continue the suit at the risk of endangering his life. *See, e.g., Tyrill v. Alcoa Steamship Co.,* 158 F.Supp. 853, 854 (S.D.N.Y.1958) (motion to transfer case under 28 U.S.C. § 1404(a) that under normal circumstances would justify a transfer was refused when plaintiff, who was a paraplegic, demonstrated that there were no suitable medical facilities located within the transferee district and transfer would mean plaintiff would either have to drop the suit or risk endangering his life). Even if such evidence were present in the record, it would constitute only one factor to be considered in the balancing test and would not necessarily be considered dispositive. *See, e.g., N.I.S. Corp. v. Swindle,* 724 F.2d 707, 709 (8th Cir.1974) (convenience of witnesses and parties is only one factor to be considered in a motion to transfer under 28 U.S.C. § 1404(a) and must be weighed against all the other relevant factors).

Thus, the Court concludes that the evidence demonstrates that the slight inconvenience to the Plaintiff for not staying in Delaware is substantially outweighed by the convenience afforded to the Defendant in transferring the action to the Central District in California.

## INTEREST OF JUSTICE

Finally, the Court must consider the "interests of justice" in deciding whether to transfer this action. Some of the criteria relating to the interests of justice issue include the access to proof and the cost to the parties, the availability of judicial process and the maintenance of sound judicial administration and proper conservation of judicial resources. *See, e.g., Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960); *Bell Telephone Lab. v. Interna-*

*tional Business Mach.,* 630 F.Supp. 373, 376 (D.Del.1984); *Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 147 (D.Del.1985). Analysis of each of these considerations favors the transfer of this lawsuit to the Central District Court in California.

Cost to the parties and access to proof are relevant factors to be considered in determining the interests of justice. *See, e.g., Mobil Oil Corporation v. W.R. Grace & Company,* 334 F.Supp. 117, 124 (S.D.Tex.1971) (cost of transportation of documentary evidence and witnesses are relevant factors to be considered in a motion to transfer). In determining the cost to the parties, the court may take into account the financial condition of the parties involved. *Georgia Payne v. Kristofferson,* 631 F.Supp. 39 (N.D.Ga.1985). In the present case, Defendant presents evidence that it is a small corporation employing only twenty-five people. D.I. 47, Exhibit A, ¶ 13. Essex has not made a profit since it became an independent entity in 1982 and is currently heavily in debt with all of its assets pledged as security for the indebtedness. *Id.,* ¶ 13. If Essex were forced to litigate this case in Delaware, it would be required to ship its corporate records relating to the infringing activities to Delaware. *Id.,* ¶ 29. In addition, Essex would be forced to reimburse its witnesses for at least their travel and subsistence expenses. *Id.,* ¶ 24. Furthermore, if those persons currently employed by Essex are willing to attend trial in Delaware, they will be entitled to demand continuance of their salaries during their attendance. *Id.,* ¶ 27. Payment of these expenses would present a financial hardship on Essex given their current financial condition. *Id.* In addition, if Messrs. Kaufman, Moore, Echols and Mrs. Diaz were required to be absent from Essex, the ability of Essex to operate will be severely handicapped. *Id.,* ¶ 28. Taken together, these factors indicate that litigation of this case in Delaware would create a substantial financial hardship on Essex, thereby threatening its continued existence. *Id.,* ¶ 28.

550

Plaintiff contends that if the case were transferred, he would incur "substantial additional expenses" in litigating the case in California than if the case remained in Delaware. D.I. 47, at 12. Plaintiff does not, however, offer any evidence explaining the increased expenses. Presumably, the expenses involved are the increased transportation costs of the Plaintiff and his trial counsel for traveling to California instead of Delaware. This Court finds the Plaintiff's argument unpersuasive because the convenience of the party and his counsel is a "relatively unimportant factor" in evaluating litigation costs. *Orleander S.A. v. Avocet, Inc.*, 224 USPQ 170, 174 (S.D.N.Y. 1984) [1984 WL 557]; *see also Volk Corp. v. Art–Pak Clip Art Service*, 432 F.Supp. 1179 (S.D.N.Y.1977). Thus, the marginal inconvenience incurred to Plaintiff and his counsel in transferring the case to the Central District of California is not sufficient to overcome the inconvenience to Essex by a trial in Delaware. In sum, it would better serve the interests of justice on the issue of litigation costs to transfer the action because the reduction of cost to the Defendant Essex would help preserve the financial structure of that corporation. That factor outweighs the marginal additional transportation costs incurred by Plaintiff and his trial counsel.

Regarding the availability of compulsory process, the Court's subpoena power over non-party witnesses is another factor in evaluating the interests of justice. *Bergman v. Brainin*, 512 F.Supp. 972, 974–75 (D.Del.1981). All of the witnesses Essex plans to call to testify at trial are California residents who cannot be compelled to testify by subpoena. D.I. 47, Exhibit A, ¶ 23.[5] Although the Plaintiff notes that some of these witnesses are employees of the Defendant and will naturally desire to testify at trial, the Defendant has demonstrated that the cost of transportation of these witnesses and the absence from the work

place present a financial hardship to the Defendant. In any event, since these witnesses are not subject to compulsory process in Delaware, it would better serve the interests of justice for the case to be transferred to California where the witnesses would be subject to process under Rule 45(e)(1).

On the issue of conservation of judicial resources, another key component of the interests of justice, Plaintiff contends that judicial economy favors retention of the case in Delaware because the court is already familiar with the case as compared with a new court in California. D.I. 48, at 16. Consideration of the elements constituting the interests of justice requires the Court to carefully consider the facts and to weigh them in light of the convenience to the parties. An often cited component of the interest of justice is to permit suits involving the same parties and issues to proceed before one court and not to permit simultaneous proceedings to continue before two different courts. *Pall*, 523 F.Supp. at 450. Although there are no related cases pending in the District Court for the Central District of California involving the same parties or issue, this does not preclude transfer of this suit there. *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 739 (1st Cir.1977). Since judicial economy would be equally served by either retention or transfer of this particular case, there is no reason why the case cannot be transferred given the Defendant's lesser burden of proof in this motion. *See, e.g., Lank v. Federal Insurance Company*, 309 F.Supp. 349, 352–353 (D.Del.1970) (defendant not required to make a positive showing of judicial economy).

The Court, having weighed the relevant statutory requirements under 28 U.S.C. § 1404(a), concludes that the Defendant Essex has met its burden of proof and that this action should be transferred to the

5. Federal Rule of Civil Procedure 45(e)(1) provides in pertinent part: "A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial...." Because California is more than 100 miles from the State of Delaware, it is beyond the subpoena power of this Court to compel any witnesses located in California to testify in the case.