MINSTAR, INC., Irwin L. Jacobs, Dennis M. Mathisen, Daniel T. Lindsay, Gerald A. Schwalbach, and TR Holdings, Inc., on behalf of themselves and derivatively on behalf of Tidewater, Inc., Plaintiffs,

v.

John P. LABORDE, Tidewater, Inc., Damon B. Bankston, David B. Graf, Sr., Arthur R. Carlson, Paul W. Murrill, Warren M. Shapleigh, Ronald H. Boh, Alden J. Laborde, Hellenic, Inc., and Otto Candies, Inc., Defendants.

Brocha KATZMAN, Plaintiff,

v.

John P. LABORDE, Damon B. Bankston, David B. Graf, Sr., Arthur R. Carlson, Paul W. Murrill, Warren M. Shapleigh, Ronald H. Boh, Alden J. Laborde, Hellenic, Inc., Otto Candies, Inc. and Tidewater, Inc., Defendants.

Civ. A. Nos. 85–535–JLL, 85–554–JLL.

United States District Court,
D. Delaware.

Dec. 24, 1985.

R. Franklin Balotti of Richards, Layton & Finger, Wilmington, Del. (Nancy E. Barton of Weil, Gotshal & Manges, New York City, of counsel), for plaintiffs Minstar, Inc. et al.

Kevin Gross of Morris & Rosenthal, Wilmington, Del. (Stull, Stull & Brody, and Law Offices of Joseph H. Weiss, New York City, of counsel), for plaintiff Katzman.

Rodman Ward, Jr., of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del. (Robert E. Zimet and Clifford H. Aronson of Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for defendants.

LATCHUM, Senior District Judge.

These consolidated actions are brought pursuant to §§ 13(d) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa *et seq.*, as well as under Delaware state law. Plaintiffs Minstar, Inc. ("Mins-

tar"), Irwin L. Jacobs, Dennis M. Mathisen, Daniel T. Lindsay, Gerald A. Schwalbach (collectively "the Jacobs Group"), and TR Holdings, Inc. ("TR Holdings") filed this action against Tidewater, Inc. ("Tidewater"), the eight Tidewater directors, Hellenic, Inc. ("Hellenic"), and Otto Candies, Inc. ("Otto Candies") on September 3, 1985. On September 13, 1985, Brocha Katzman ("Katzman"), a Tidewater shareholder, filed a shareholder derivative action against the same defendants alleging similar securities law and Delaware law violations.[1] Pursuant to Fed.R.Civ.P. 42(a), this Court consolidated the two actions.[2]

The individual plaintiffs are all residents of Minnesota; Minstar and TR Holdings are incorporated in Delaware and their principal places of business are in Minnesota.[3] The three corporate defendants in this case, Tidewater, Hellenic, and Otto Candies all have their principal places of business in Louisiana.[4] Tidewater is incorporated in Delaware, but has no Delaware facilities.[5] With respect to the eight individual defendants, six are residents of Louisiana, one is a resident of Missouri, and one is a resident of California.[6]

Two additional derivative actions seeking similar relief have been filed against Tidewater and its directors in Delaware State Chancery Court.[7] Presently before this Court is defendants' motion,[8] pursuant to 28 U.S.C. § 1404(a), for an order transferring this action to the United States District Court for the Eastern District of Louisiana, which sits in New Orleans.

For the reasons set forth below, the Court has determined that the convenience of the parties and witnesses, in the interests of justice, weigh strongly in favor of transferring this action to the Eastern District of Louisiana. Accordingly, defendants' motion will be granted.

## I. STATUTORY REQUIREMENTS

■ A civil action may be transferred under § 1404(a) to another district "where it might have been brought" if the court, in its discretion, determines that the transfer would be "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). The preliminary question is whether the Eastern District of Louisiana is a district where this action "might have been brought." Under either the specific venue provision for the alleged securities law violations, § 27 of the Exchange Act, 15 U.S.C. § 78aa, or the general venue provision, 28 U.S.C. § 1391(b), an action may be brought in any district in which the claims arose. Since the events surrounding plaintiffs' allegations all took place primarily in New Orleans, the Court finds that the claims arose in the Eastern District of Louisiana.[9] Indeed, the plaintiffs do not contend that venue is improper in the Eastern District of Louisiana. Therefore, the Court has the power to transfer this action.

---

1. Civil Action No. 85–554.

2. Docket Item ("D.I.") 12.

3. D.I. 17 at 2; D.I. 4 at 9.

4. D.I. 4 at 2–4.

5. *Id.* at 2.

6. *Id.* at 3–4.

7. *Stepak v. Tidewater, Inc.,* C.A. No. 8164 (Del. Ch.1985); *Minstar, Inc. v. Tidewater, Inc.,* C.A. No. 8175 (Del.Ch.1985).

8. D.I. 5.

9. This consolidated action challenges under Federal securities laws and state law certain transactions allegedly engaged in by the defendants, as well as certain disclosures made by the defendants. Specifically challenged are: (1) employee agreements entered into by Tidewater and certain of its directors and management; (2) the acquisition by Tidewater of five vessels from Otto Candies in exchange for 600,000 shares of Tidewater common stock; (3) a proposal by Tidewater to amend the bylaws to require an 80% shareholder vote for certain future bylaw amendments; (4) a proposal by Tidewater to amend its stock option program; (5) an alleged breach of the standstill agreement entered into between Tidewater and the plaintiffs; (6) the accuracy of the proxy statement for the 1985 annual meeting; and (7) the failure of the defendants to file a Schedule 13D disclosing their ownership of Tidewater stock. D.I. 4 at 4–5.

■ The remaining question is whether this Court should exercise its discretion to transfer this case. In evaluating the three statutory criteria set forth in § 1404(a), courts in this circuit apply the well settled standard enunciated in *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971), which states that: "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." (Emphasis original.) *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (similar standard set forth when applying the doctrine of *forum non conveniens* -the precursor to § 1404(a) ). *Shutte* established that the proponent of a § 1404(a) transfer must make an ample showing to overcome the substantial weight attributable to plaintiffs' choice of forum.

■ Nevertheless, when plaintiffs choose to bring suit in a district that is not at or near their place of residence, the "convenience to plaintiff[s] of litigating in [their] choice of forum is not as great as it would be were [they] litigating at or near [their] residence, [their] principal place of business, or the site of the activities at issue in the lawsuit." *Pall Corp. v. Bentley Laboratories, Inc.*, 523 F.Supp. 450, 452 (D.Del.1981); *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822–23 (D.Del.1976); accord Clopay Corp. v. Newell Cos., 527 F.Supp. 733 (D.Del. 1981). Thus, the *Shutte* rule has "less of an impact in those cases where the plaintiff selects a forum which is connected neither with the plaintiff or the subject matter of

the lawsuit." *Hardy v. Beloit Corp.*, No. 79–198, slip. op. at 2 (D.Del. May 5, 1976).[10]

## II. CONVENIENCE OF PARTIES

■ Since the businesses of Minstar and TR Holdings are primarily conducted by the four individual plaintiffs, these individuals' relative conveniences must be balanced against the conveniences of the defendants. Here, the convenience to the defendants strongly militates in favor of transferring this action to the Eastern District of Louisiana. Tidewater's corporate headquarters and principal place of business are in New Orleans, situated within the Eastern District of Louisiana.[11] Moreover, all of Tidewater's business records relevant to the allegations in this case are located at its corporate offices in New Orleans.[12]

Additionally, the eight individual defendants serve on the board of directors of Tidewater. Six of the eight individuals reside in Louisiana; of the remaining two, one resides in California and one resides in Missouri.[13] The other two corporate defendants, Otto Candies and Hellenic, likewise have their principal places of business in Louisiana.[14]

Moreover, of the four individual plaintiffs comprising the Jacobs Group, none appear to have any significant ties to Delaware. Rather, each of the individual plaintiffs reside in Minnesota.[15] Thus, transferring this case to the Eastern District of Louisiana will add very little inconvenience to the Jacobs Group. Furthermore, TR Holdings, although incorporated in Delaware, has its corporate offices in

---

**10.** Katzman, the plaintiff in one of these consolidated actions, has expressly adopted the arguments set forth in the other plaintiffs' brief in opposition to defendants' motion to transfer. Since Katzman does not raise any additional considerations in opposing defendants' motion to transfer and the other plaintiffs do not argue that Katzman will suffer any inconvenience if this action is transferred, the Court need not interject the relative conveniences of plaintiff Katzman into the § 1404(a) calculus. *See* D.I. 22.

Because these actions were consolidated *for all purposes,* the Katzman action, formerly C.A.

No. 85–554, falls within the ambit of this Court's order transferring these consolidated cases to the Eastern District of Louisiana. *See* D.I. 12.

**11.** D.I. 4 at 2.

**12.** *Id.*

**13.** *Id.* at 3–4.

**14.** *Id.* at 4.

**15.** *Id.* at 9.

Minnesota.[16] Minstar, incorporated in Delaware, also has its corporate offices and principal place of business in Minnesota.[17]

In balancing the parties' relative conveniences between trying this action in New Orleans or Wilmington, the most salient factor is that the Jacobs Group has to travel to a foreign jurisdiction no matter where this action is tried. Although defendants have a lesser burden in these instances, the increase in convenience that will accrue to them by transferring this action to the Eastern District of Louisiana significantly outweighs any marginal increase in inconvenience to plaintiffs.

This Court has repeatedly held that a § 1404(a) motion should be granted when a transfer will greatly aid the movant, yet barely disadvantage the opponent. *See, e.g., Pall Corp. v. Bentley Laboratories, Inc.,* 523 F.Supp. 450, 452–53 (D.Del.1981) (minimal inconvenience to New York plaintiff to litigate case in California when neither party had facilities in Delaware; case transferred pursuant to § 1404(a) ); *General Instrument Corp. v. Mostek Corp.,* 417 F.Supp. 821, 823 (D.Del.1976) (plaintiff's additional travel time of two and one-half hours significantly outweighed by substantial disruption to defendant's business; case transferred to district where defendant resided).

Plaintiffs' arguments that its choice of forum should be accorded great deference and that transfer of this action to the Eastern District of Louisiana would simply result in shifting the inconvenience from defendants to plaintiffs are untenable. "[T]he mere fact that Delaware is the plaintiffs' choice of forum and [some of] the defendants' state of incorporation will not, standing alone, prevent this Court from transferring this suit to another forum." *Kaiser Industries Corp. v. Wheel-ing-Pittsburgh Steel Corp.,* 328 F.Supp. 365, 369 (D.Del.1971). *Accord Quandt v. Beech Aircraft Corp.,* 317 F.Supp. 1009, 1012 (D.Del.1970) (plaintiff's choice of forum is not determinative "when the forum chosen is only the statutory home state" of the corporate parties; *see also Sanyo Electric Trading Co. v. Masco Corp.,* 429 F.Supp. 1023, 1024–25 n. 11 (D.Del.1977). Since the Jacobs Group has to travel to a foreign jurisdiction to litigate this suit, requiring them to travel from Minnesota to New Orleans instead of Wilmington results in minimal inconvenience when juxtaposed against the significant convenience accorded to defendants by transferring this case.

## III. CONVENIENCE OF WITNESSES

Since most of the individual parties to this action are likely to be witnesses, balancing their relative inconveniences as parties is equally applicable to the parties as witnesses.[18] Since plaintiffs' allegations are based on issues of nondisclosure and fiduciary duty, the sixteen employees of Tidewater who entered into employee severance agreements with Tidewater are likely witnesses in this case. Of the sixteen employees, fourteen reside in New Orleans, Louisiana; of the remaining two employees, one resides in Texas and one resides in Venezuela, both of which are geographically closer to Louisiana than to Delaware.[19]

Moreover, any other prospective witnesses are likely to be employees of either Tidewater, Otto Candies, or Hellenic, and would therefore be situated in Louisiana. Plaintiffs have not identified any other witnesses that they might call at trial. Since the three corporate defendants have their principal places of business in Louisiana, litigating this action in the Eastern District of Louisiana will greatly add to the conve-

---

**16.** *Id.*

**17.** *Id.*

**18.** In their brief, D.I. 16 at 18, plaintiffs argue that one of the reasons it would be more convenient for them to retain this action in Delaware is because their attorneys are situated in New York, which is geographically closer to Del-

aware than Louisiana. This argument lacks merit. "[T]he convenience of counsel, of course, is not a factor for consideration in an application for transfer." *General Electric Co. v. Westinghouse Electric Co.,* 294 F.Supp. 36, 37 (D.Del.1968).

**19.** D.I. 4 at 5–6.

nience of the witnesses because the relevant documents are situated in that forum.

Tidewater's as well as Otto Candies' and Hellenic's operations would be severely hampered if they were required to transport their directors, officers, and key employees, as well as their documents, to Delaware. Conversely, requiring the Jacobs Group to litigate in Louisiana, as opposed to Delaware, will result in minimal inconvenience to them because they chose to file this action in a foreign jurisdiction. Had plaintiffs chose to commence this litigation in Minnesota, assuming venue would have been proper there, a different case would be presented to the Court. Plaintiffs' arguments that the conveniences would be merely shifted, and that its choice of forum is entitled to great deference, would be much stronger had they filed this action in Minnesota.

■ Accordingly, like the convenience to the parties, the convenience to the prospective witnesses weighs heavily in favor of transferring this action to the Eastern District of Louisiana.[20]

## IV. INTEREST OF JUSTICE

■ The remaining statutory criterion enunciated in § 1404(a) is whether the transfer would be in the interest of justice. Although a prime component of this criterion is the economic and efficient utilization of judicial resources, *see Bell Tel. Laboratories Inc. v. International Business Machines,* No. 84–02, slip op. at 4 (D.Del. Oct. 18, 1984), other components include the cost to the parties, access to proof, and the availability of compulsory process. *Textron Inc. v. Elco Indus. Inc.,* No. 85–286, slip op. at 3 (D.Del. Sept. 10, 1985); *Jackson Jordan, Inc. v. Plasser American Corp.,* No. 82–459, slip op. (D.Del. Oct. 22, 1982).

Plaintiffs assert that the primary reason they chose Delaware as the forum for this case is because a Delaware federal court would be more familiar with the complex issues of Delaware corporate law, especially in light of recent groundbreaking Delaware state court decisions.[21] Thus plaintiffs assert that judicial resources will be more efficiently utilized if this case is tried in Delaware, as opposed to Louisiana.

Plaintiffs support their argument by relying on *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), which reasoned that it might be more appropriate to litigate a state law question in the federal forum at home with the state law. However, plaintiffs omitted the fact that *Van Dusen* was a diversity of citizenship case, and that the Supreme Court's reasoning was limited to diversity situations. *See id.* at 645, 84 S.Ct. at 824.[22]

■ Here, there is federal question jurisdiction with pendent state law claims attached. This distinction is crucial for two reasons. First, Delaware corporate law is national in scope, *see, e.g., Moran v. Household Int'l Inc.,* 500 A.2d 1346 (Del.Sup.Ct. 1985). Thus, more state forums have a familiarity with Delaware corporate law than with each state's negligence laws, which were at issue in *Van Dusen.* Second, here plaintiffs have an opportunity to litigate their pendent Delaware corporate law claims in Delaware state court. This could be done by severing the pendent state law claims from the federal securities law claims. While this solution is inefficient from a judicial resources perspective, plaintiffs cannot piggyback their pendent state law claims, over which federal jurisdiction is discretionary, onto federal question claims for the purpose of thwarting an otherwise compelling case for granting a § 1404(a) transfer motion.

---

**20.** To alleviate some of the inconvenience to witnesses and defendants, plaintiffs represent that they are willing to use photocopies of defendants' documents at trial. D.I. 17 at 8. Although this mechanism would lessen the disruption of defendants' businesses, *see, e.g., Zorn v. Anderson,* 263 F.Supp. 745, 749 (S.D.N.Y.1966),

this is not enough to overcome defendants' strong showing of inconvenience to witnesses and parties if this case were tried in Delaware.

**21.** D.I. 17 at 6–7.

**22.** D.I. 16 at 21.

Moreover, this Court, in an opinion by Judge Stapleton, rejected the argument that other federal courts cannot interpret Delaware corporate law as easily as this Court could. In *NLT Corp. v. Great Southern Corp.*, No. 78–350, slip op. at 4 (D.Del. Sept. 14, 1978), Judge Stapleton opined: "I am not persuaded that any special knowledge of Delaware law is necessary for the court which will hear this case. There is no reason to believe that the [federal] court in Texas will not be able to apply properly the Delaware fiduciary law the plaintiff relies upon."

Moreover, if Delaware corporate law regarding plaintiffs' allegations is in the early stages of its evolution, as plaintiffs argue, then this Court, as well as the Eastern District of Louisiana, is approaching a body of corporate law from a similar perspective of unfamiliarity. Therefore, both the District of Delaware and the Eastern District of Louisiana are approaching Delaware state corporate law from the same starting point.[23]

■ Plaintiffs also argue that judicial economy will be served by maintaining this action in Delaware because the Delaware courts are less congested than the Louisiana courts. Although the caseload per judge in the District of Delaware is less than the caseload per judge in the Eastern District of Louisiana, the median length of time to trial in Louisiana is five months less than in Delaware.[24] Thus, the judicial economy statistics advanced by plaintiffs are inconclusive. Nonetheless, a backlog of cases is insufficient to prevent a § 1404(a) transfer which is otherwise mandated by the convenience of the parties and witnesses. *NLT Corp.*, slip op. at 4; *see Hall v. Kittay*, 396 F.Supp. 261, 264

(D.Del.1975) ("the mere possibility of reaching trial in a shorter space of time in Delaware ... does not justify the denial of a transfer motion which is otherwise called for under the standards of § 1404(a)").

The remaining components of the interest of justice criterion weigh strongly in favor of transferring this case to the Eastern District of Louisiana. The litigation costs defendants will be forced to incur will be much less by trying this case in the Eastern District of Louisiana. Conversely, the litigation costs plaintiffs will be forced to incur should be approximately the same. This is because the plaintiffs must travel whether this case is heard in Wilmington or New Orleans. Likewise, since all the relevant documents are located in Louisiana, the interest of justice is also served by utilizing the Louisiana forum because of the easier access to proof.

■ Regarding the availability of compulsory process, the court's subpoena power over third party witnesses is a factor in evaluating the interest of justice. *Bergman v. Brainin*, 512 F.Supp. 972, 974–75 (D.Del.1981). Defendants make unsubstantiated assertions that essential third party witnesses reside within the subpoena power of the Eastern District of Louisiana and without the subpoena of the District of Delaware. Plaintiffs counter, quite correctly, that the vast majority of potential third party witnesses are employees, officers, or other persons within the control of defendants. Although most of the potential third party witnesses are located in Louisiana, defendants make no showing of either the necessity for their live testimony or their unwillingness to attend voluntarily. Therefore, the Court disregards the avail-

**23.** In their answering brief, D.I. 16 at 14 n. 2., plaintiffs contend that the "mirror image" of this case would be a case involving an attempt to transfer from Louisiana District Court an action which involves a question of Louisiana civil law. This contention is unmeritorious because Delaware corporate law has a much broader national application than does Louisiana civil law. Furthermore, the contract between Tidewater and Otto Candies to purchase five ships expressly provides that it is governed

by Louisiana law. D.I. 4 at 6–7. Since the Eastern District of Louisiana is compelled to apply the law of the transferor forum, *see Van Dusen v. Barrack*, 376 U.S. 612, 641–43, 84 S.Ct. 805, 821–23, 11 L.Ed.2d 945 (1964), it may well be that Louisiana state law will govern the interpretation of one of the contracts in this case.

**24.** *See* Federal Court Management Statistics (1984).

ability of compulsory process as a factor in evaluating the interest of justice. *See Burroughs Wellcome Co. v. Giant Food Inc.*, 392 F.Supp. 761, 764 (D.Del.1975).

■ Plaintiffs also argue that defendants bear a heightened burden on a § 1404(a) motion because of the liberal venue provisions of the federal securities laws, Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa.[25] Although there is sparse support for this proposition, *see S–G Securities Inc. v. Fuqua Investors Co.*, 466 F.Supp. 1114, 1122 (D.Mass.1978), there is no authority in this circuit for the proposition that the burden to transfer a federal securities case is somehow higher than the burden in other types of civil actions. This Court is of the view that 28 U.S.C. § 1404(a) applies in the same form to all types of civil actions; further, Congress could have, but did not, carve out a securities law exception to § 1404(a).

■ Both parties advance arguments based on the nexus between certain transactions and the parties' desired forums, relying on this nexus as support for their respective positions.[26] These "contact" arguments are irrelevant to a § 1404(a) evaluation. Since the parties do not contend that these contacts have any role in their presentation of this case at trial, there is no connection between these contacts and balancing the parties' and witnesses' relative conveniences between trying this case in Delaware or Louisiana.

## V. CONCLUSION

Because plaintiffs will suffer minimal inconvenience from transferring this case to the Eastern District of Louisiana, and defendants will receive a significant increase in convenience, the Court finds, in its discretion, that this case should be transferred to the United States District Court for the Eastern District of Louisiana. The convenience that will accrue to the witnesses, when combined with the interest of justice,

make a compelling case for transfer under § 1404(a).

An order will be entered in accordance with this Memorandum Opinion.

---

**25.** Section 27 provides that an action may be brought in any district "wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa.

**26.** D.I. 6 at 8, 10–11; D.I. 16 at 14.