Richard I. BURSTEIN, on behalf of himself and all others similarly situated, Plaintiff,

v.

APPLIED EXTRUSION TECHNOLO- GIES, INC., Amin J. Khoury, Robert C. Slocumb, Paul W. Marshall, Richard G. Hamermesh, Hansjoerg Wyss, B. Martha Cassidy, Fred C. Danforth, Joseph O'Donnell, Petros A. Palandjian, Mark Harmeling, Nader Golestaneh, and Bruce A. Edge, Defendants.

Civ. A. No. 91–712 LON.

United States District Court, D. Delaware.

Aug. 25, 1992.

See also 755 F.Supp. 635.

Norman M. Monhait, and Jeffrey S. Goddess, Rosenthal, Monhait & Gross, P.A., Wilmington, DE; Of Counsel: Susan Schneider Thomas, and Dennis J. Johnson, Zlotnick & Thomas, Bala Cynwyd, PA, for plaintiff.

Kevin G. Abrams, and Robert J. Stearn, Jr., Richards, Layton & Finger, Wilmington, DE; Of Counsel: John D. Donovan, Jr., and Ivan B. Knauer, Ropes & Gray, Boston, MA, for defendants.

## MEMORANDUM OPINION

LONGOBARDI, Chief Judge.

The Plaintiff filed this action in December, 1991, alleging that the Defendants violated certain provisions of the Securities Act of 1933 ("the '33 Act"), the Securities Exchange Act of 1934 ("the '34 Act"), Rule 10b–5 of the Securities Exchange Commission and the common law of misrepresentation. Pending before the Court is a motion pursuant to 28 U.S.C. § 1404(a) to transfer this action[1] to the United States District Court for the District of Massachusetts. Docket Item ("D.I.") 12.

## BACKGROUND

Applied Extrusion Technologies, Inc. ("AET" or the "Company") was incorporated in Delaware in 1986. Prospectus at 5 (attached to D.I. 14 as Exhibit ("Ex.") A). Its

---

1. Although this action was filed as a class action, the Court has not yet certified a class. Thus, even though the Court will discuss briefly the residence of members of the purported class, nothing in this Opinion should be taken to infer that the Court believes that the action should or should not be maintained as a class action.

principal executive offices are in Middletown, Delaware. *Id.;* D.I. 16, Ex. F (Form 10–K for the fiscal year ended September 30, 1991). The Defendants do not dispute that the Company's principal place of business is also in Middletown. *See generally* D.I. 24. AET "develops, manufactures and sells both a broad range of extruded thermoplastic nets" and non-net thermoplastic products. Prospectus at 5. In December, 1990, AET purchased substantially all of the assets of the netting and industrial extrusion divisions of the Maynard Plastics Division of Chelsea Industries, Inc. ("Maynard Plastics"). This enabled AET to expand its production capabilities into strong nets. D.I. 14, ¶ 2; D.I. 1, ¶ 19. Strong nets are biaxially-oriented net products with high strength-to-weight ratios that are used in a variety of agricultural and environmental applications. They are also used in home furnishing and packaging applications. Prospectus at 19; D.I. 1, ¶ 18. Prior to the acquisition, AET had no experience in producing strong nets. D.I. 1, ¶ 19.

Prior to December, 1990, AET leased a 30,000 square foot facility in Orleans, Massachusetts, and owned a 140,000 square foot facility in Middletown, Delaware. Neither facility has ever been involved in the production of strong nets. D.I. 14, ¶ 3. In connection with the acquisition of Maynard Plastics, AET purchased from Chelsea Industries a 170,000 square foot facility in Salem, Massachusetts, and agreed to lease a 50,000 square foot facility in Peabody, Massachusetts. Maynard Plastics' strong net production lines were located at the Peabody facility. *Id.,* ¶ 2. Subsequently, AET began transferring the strong nets operation to the Salem facility. *Id.,* ¶ 5.

In June, 1991, AET issued three million shares of common stock in an Initial Public Offering (the "IPO") pursuant to a prospectus dated June 6, 1991. A primary purpose of the IPO was to retire some of the debt incurred in the acquisition of Maynard Plastics. *Id.,* ¶ 4; D.I. 13 at 8–9; Prospectus at 7. The Plaintiff's complaint, in essence, alleges that during the period from June 6, 1991, through December 2, 1991 (the "class period"), the Defendants made materially false and misleading statements to the SEC,

the public and the underwriter in the offering, misrepresented AET's prospects, failed to disclose material information relating to the consolidation of the Peabody and Salem plants, failed to disclose material information about the production capabilities of the Maynard Plastics operation and materially inflated sales and earnings figures in AET's prospectus and quarterly reports. *See generally* D.I. 1.

According to the Defendants and not disputed by the Plaintiff, the materials relating to the IPO were printed by a company in Boston, Massachusetts. D.I. 13 at 9 (citing D.I. 14, ¶ 14; Defendants' Response to Plaintiffs First Set of Interrogatories and Requests for Documents ("D.R.") No. 5). AET held sixteen meetings relating to the IPO. Fourteen of these were held in Massachusetts. Two were held in Middletown and, according to the Defendants, were ·only routine analyst meetings pertaining to products manufactured at Middletown. *Id.* (citing D.R. No. 5). The Plaintiff asserts that documents relating to budgets, projections, forecasts, analyses of results of operations, the June, 1991 IPO, investment analyses and independent audits are all located in Delaware. D.I. 15 at 4 (citing D.R. No. 12). The Defendants concede as much but maintain these documents can also be found in Massachusetts:

> Documents regarding the acquisition, SEC or other regulatory filings, shareholder reports, press releases, budgets, projections, forecasts, investment analyst reports or communications, the IPO, the market price or trading of AET stock, and ownership or trading of AET stock by any Defendant, are located in Massachusetts and Delaware.

D.I. 13 at 10 (citing D.R. Nos. 11, 12). In addition, documents on strong net quality control and operations and AET personnel records are located only in Massachusetts. *Id.* (citing D.I. 14, ¶ 6; D.R. Nos. 11, 12). The correspondence files of the individual Defendants are located at their respective primary places of business. *Id.* (citing D.R. No. 12). The primary place of business for nine of the twelve individual Defendants is in Massachusetts; thus, the correspondence

files of these nine Defendants are in Massachusetts. *Id.* (citing D.R. No. 2). Of the remaining three Defendants, one, Bruce Edge, is the Chief Financial Officer and a Senior Vice President. His office is in Middletown, Delaware, and he resides in Wilmington, Delaware. D.I. 14, ¶ 8. Mr. Wyss works and resides in Pennsylvania and Ms. Cassidy works and resides in New York. *Id.*, ¶ 10. All meetings of AET's Board of Directors and its committees have occurred in Massachusetts or have originated there if occurring via telephone. D.I. 13 at 10 (citing D.I. 14, ¶ 14; D.R. No. 4).

Several potential non-party witnesses have been identified by the parties:

—Bradley Yount, Steve Freese, Frank Richardson, David Blakely, Robert Mills, Linda McCormick, Nancy Bethel, Sandy Rook and James O'Hare, all of whom are located in *Boston, Massachusetts;* [2]

—David Lahar of the *San Francisco* Office of PaineWebber, Inc.;

—Thomas Dale, Joy Tomlinson, and Alexander Rossi of the *New York* Office of PaineWebber, Inc.;

—Cynthia M. Sobieski of the Deloitte & Touche Office in *Philadelphia, Pennsylvania;* [3] and

—L. Carl Belt of Evan Associates in *Lebanon, New Jersey.*

D.I. 13 at 21, 26; D.I. 24 at 23–24; D.I. 16, ¶¶ 2, 3.

A declaration submitted by the Plaintiff suggests that additional employees of Deloitte & Touche may have probative evidence to be introduced at trial. Specifically, the declaration of Susan Schneider Thomas, D.I. 16, ¶ 2a, indicates that the Plaintiff currently believes that "[i]ndividuals responsible for the audit of ... [AET's] financial statements in connection with" the IPO will have proba-

tive evidence. Although she does not name the individuals, Thomas indicates that "[t]hree of the four individuals who worked on the Initial Public Offering are located in Philadelphia, Pennsylvania...." *Id.*

### ANALYSIS

■ Under title 28, section 1404(a) of the United States Code, the Court possesses the authority to transfer this action if it originally might have been brought in the District of Massachusetts, if the transfer would provide greater convenience for the parties and witnesses and if the transfer would serve the interests of justice. No party claims that the action could not have originally been brought in the District of Massachusetts. Pursuant to 15 U.S.C. §§ 77v and 78aa and 28 U.S.C. §§ 1331, 1337 and 1367, the District of Massachusetts has jurisdiction over the subject matter of the action. *Cf. Kirschner Bros. Oil, Inc. v. Pannill,* 697 F.Supp. 804, 806 (D.Del.1988) ("Defendants sold stock through an allegedly misleading prospectus and made allegedly false or misleading disclosures throughout the country and in that District in claimed violation of the '33 Act and the '34 Act").

The Court of Appeals for the Third Circuit has explained that:

It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice " \* \* \* should not be lightly disturbed." ... In accord with that sound doctrine, one district court recently correctly observed: "The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." ... The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer, ... and " \* \* \* unless the bal-

---

**2.** Eight of these nine potential witnesses appear to be employees of AET. *See* D.I. 24 at 25 n. 17. The Defendants assert that the presence in Boston of Messrs. Yount, Freese and Richardson is essential to AET's "successful operations." D.I. 13 at 21. Mr. Yount is the Executive Vice President of Operation; Mr. Freese is the vice President of Operations—Salem and Peabody; and Mr. Richardson is a Senior vice President—Engineering. *Id.*

**3.** In their opening brief, the Defendants listed Thomas Granite, Robert Graham and Fred Groffam of Deloitte & Touche's Philadelphia Office as potential witnesses. D.I. 13 at 26. The Court will take these individuals into account in its analysis of the transfer motion.

ance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail."
*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir.1970) (citations omitted), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

 The forum chosen by the Plaintiff must reflect rational and legitimate concerns. *Waste Distillation Technology, Inc. v. Pan American Res., Inc.*, 775 F.Supp. 759, 764 (D.Del.1991) (citing *Clopay Corp. v. Newell Cos., Inc.*, 527 F.Supp. 733, 736 (D.Del.1981)). When the plaintiff has chosen to bring suit in a district that is not his "home turf" and which has no connection to any of the acts giving rise to the lawsuit, the convenience to the plaintiff is "not as great as it would be were [he] litigating at or near [his] principal place of business or at the site of the activities at issue in the lawsuit." *Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F.Supp. 634, 637 (D.Del.1983) (citations omitted). *See also Magee v. Essex–Tec Corp.*, 704 F.Supp. 543, 547 (D.Del.1988); *Kirschner*, 697 F.Supp. at 806. Consequently, the " 'quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer' is concomitantly reduced." *Clopay Corp.*, 527 F.Supp. at 736 (quoting *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822–23 (D.Del.1976)).

 This District is clearly not the Plaintiff's home turf which has been defined as " 'the forum closest to the [plaintiff's] home in which [plaintiff] could effect personal service over the principal defendant.' " *Kirschner*, 697 F.Supp. at 806 (quoting *Mayer v. Development Corp. of America*, 396 F.Supp. 917, 932 n. 26 (D.Del.1975)). The Defendants assert that the Plaintiff is a resident of Vermont. D.I. 13 at 5, 17. The Plaintiff admits that Delaware cannot be deemed his home turf. D.I. 15 at 17. Nevertheless, the Plaintiff maintains that his claims have a "substantial connection to Delaware." *Id.* Specifically, the Plaintiff argues that:

> many significant witnesses reside in or within subpoena power of this District; many of the most highly probative documents are located in this District; several of the individual defendants reside in or

near this District; and AET is not only incorporated in this District, but also has its principal place of business and principal executive offices here.

*Id.* Moreover, the Plaintiff points out that the corporate Defendant houses its financial functions and its auditing functions in Delaware. The Philadelphia office of Deloitte & Touche, rather than the Boston office, performed the audits before issuance of the Prospectus. *Id.* at 8–9.

Most of the factors cited by Plaintiff, particularly location of witnesses and location of documentary evidence, are relevant to the question of the convenience of the parties and witnesses but have little bearing on determining whether Delaware has any connection to the "acts giving rise to the lawsuit." It is conceded that the Philadelphia office of Deloitte & Touche performed the audit and that two meetings relating to the IPO were held in Delaware. These three items, however, appear to be the only acts with any connection to Delaware. Most of the meetings relating to the IPO occurred in Massachusetts and all Board of Directors meetings either occurred in or originated in Massachusetts. *See supra; see also* D.I. 24 at 9 (citing D.R. Nos. 4, 5; D.I. 24, Ex. A, ¶ 4 (supplemental declaration of Amin Khoury)). Except for Mr. Edge, the principal financial personnel involved with the strong net production were based in Massachusetts. D.I. 24 at 8–9 (citing D.I. 14, ¶ 8; D.R. No. 3; D.I. 24, Ex. A, ¶¶ 2–4). All drafts of offering materials sent to the SEC were mailed from Massachusetts and all comments by the SEC were telephoned or mailed to Massachusetts. *Id.* at 9 (citing D.I. 24, Ex. A, ¶ 5; D.R. No. 5). Substantially all daily financial and accounting functions relating to the strong net production were performed in Massachusetts. D.I. 24, Ex. A, ¶ 2. All SEC or other regulatory filings by AET were finalized in Massachusetts. All 1991 press releases were finalized in Massachusetts and distributed initially in Massachusetts and New York. And all quarterly reports to AET stockholders in 1991 were finalized in Massachusetts. *Id.*, ¶ 6. *See generally* D.I. 24 at 8–10. Thus, although Delaware has some connection to the acts giving rise to the lawsuit, that

connection is insubstantial. *Cf. Kirschner,* 697 F.Supp. at 806 (Delaware has some connection given nationwide sale of stock and public representations; but no one alleges that Plaintiffs were harmed in Delaware or that any of Defendants actions occurred in Delaware).

■ Plaintiff makes two further arguments in support of his position that his choice of forum is entitled to heightened deference. First, the Plaintiff asserts that his choice of forum is entitled to heightened deference because of the liberal venue privilege in section 27 of the '34 Act, 15 U.S.C. § 78aa. D.I. 15 at 18–20. That section, entitled "Jurisdiction of offenses and suits", provides that:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business. . . .

15 U.S.C. § 78aa. The Plaintiff's proposition has some support. *See, e.g., Micheel v. Haralson,* 586 F.Supp. 169, 172 (E.D.Pa.1983); *S–G Securities Inc. v. Fuqua Investment Co.,* 466 F.Supp. 1114, 1122 (D.Mass.1978). Another Judge in this Court has held, however, that:

> there is no authority in this circuit for the proposition that the burden to transfer a federal securities case is somehow higher than the burden in other types of civil actions. The Court is of the view that 28 U.S.C. § 1404(a) applies in the same form to all types of civil actions; further, Congress could have, but did not, carve out a securities law exception to § 1404(a).

*Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 149 (D.Del.1985). This Court finds no reason to disagree. Section 78aa is a jurisdictional statute. It does not, by its terms, prohibit a court from transferring an action to a more convenient forum. Nor does it, by its terms, alter the standard that courts must follow in deciding whether to transfer an action.

■ The Plaintiff also seems to assert that his choice of forum is entitled to heightened deference since it is styled as a class action. D.I. 15 at 20–22. The Court disagrees and follows earlier decisions by this Court finding that a plaintiff's choice of forum is substantially less important when the plaintiff sues representatively on behalf of a class. *See, e.g., Hall v. Kittay,* 396 F.Supp. 261, 263 (D.Del.1975); *Firmani v. Clarke,* 325 F.Supp. 689, 691 (D.Del.1971). *Cf. Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947) (where there are hundreds of potential plaintiffs, claim of any one plaintiff that forum is appropriate is considerably weakened).[4]

### CONVENIENCE OF PARTIES AND WITNESSES

■ The Defendants have met their burden of showing that transfer to the District of Massachusetts would favor the overall convenience of the parties and witnesses. Nine of the twelve individual Defendants reside in Massachusetts. Thus, for these nine, at least, trial in Massachusetts would be eminently more convenient. As already noted, the remaining three individual Defendants, Mr. Edge, Mr. Wyss and Ms. Cassidy, reside in Delaware, Pennsylvania and New York, respectively. Trial in Wilmington, Delaware, would no doubt be more convenient for at least two, if not all three, of these parties. These parties, however, have joined the motion to transfer. In light of that, the increased inconvenience to these three individual Defendants is irrelevant. *See Kirschner,* 697 F.Supp. at 807 ("common sense precludes denying a motion to transfer on the

---

4. Nor has the plaintiff argued that a majority of the potential members of the class reside in Delaware. Mr. Khoury explained in his declaration that only five shareholders of record list their address in Delaware. In toto, they own 53,370 of the six million outstanding shares. Two are AET employees who owned their 52,070 shares before the IPO. One purchased 1,000 shares after the close of the class period. The remaining two bought a total of only 300 shares during the class period. *See* D.I. 13 at 19; D.I. 14, ¶ 16. Mr. Burstein has presented no evidence refuting Mr. Khoury's declaration.

basis of inconvenience to parties who have joined the motion").

The parties have identified eighteen[5] potential non-party witnesses thus far. Nine of these witnesses work and/or reside in Massachusetts; clearly, for these witnesses, trial in Massachusetts would be more convenient. Three potential non-party witnesses work and/or reside in New York; four work and/or reside in Philadelphia; and one works and/or resides in Lebanon, New Jersey. For at least five of these potential witnesses, trial in Wilmington would be more convenient and probably involve shorter travel time. For the three potential witnesses from New York, there may be no difference in convenience between trial in Wilmington and trial in Boston.[6] Finally, for the potential witness from the PaineWebber office in San Francisco, trial in either Boston or Wilmington would be equally inconvenient. The Court finds that the balance of conveniences to both the parties and the prospective witnesses weighs in favor of transferring the action to the District of Massachusetts. *Cf. Minstar*, 626 F.Supp. at 146–477.

The Defendants also ask the Court to consider the potential disruption of AET's business. Specifically, the Defendants have asserted that both Messrs. Khoury and Slocumb intend to participate in the trial. D.I. 14, ¶ 12. Both have their principal offices in Massachusetts. In addition, the Defendants asserts that the presence in Massachusetts of at least three of the identified non-party witnesses—specifically, Bradley Yount, Executive Vice President of Operations; Steve Freese, Vice President of Operations—Salem and Peabody; and Frank Richardson, Senior Vice President—Engineering—is essential to AET's successful operations. D.I. 13 at 21; D.I. 14, ¶ 8. The Court has found it appropriate in the past to consider the prolonged absence of proposed witnesses in assessing the convenience of parties and witness. *Magee*, 704 F.Supp. at 548 (prolonged absence of

witnesses, all key employees of Defendant, would cause severe financial hardship to the Defendant); *Kirschner*, 697 F.Supp. at 807 (reduction of interference with efficient conduct of Defendant's business during the trial is important factor for balancing convenience); *Sports Eye*, 565 F.Supp. at 638 (attendance at trial in Delaware would entail considerable loss of time from work for key management personnel of defendant).

 Of course, even if a transfer would benefit the Defendants significantly, the Court would not grant the motion if the net result would be merely to shift the inconvenience to the Plaintiff. *See, e.g., Sports Eye*, 565 F.Supp. at 638; *Kirschner Bros.*, 697 F.Supp. at 807. The Plaintiff, however, has not presented any evidence whatsoever that even suggests that trial in Massachusetts would be at all inconvenient for him. Indeed, the record reflects, and the Plaintiff does not deny, that the Plaintiff is a resident of Vermont. Travel time for the Plaintiff would be significantly reduced by transfer of this action to Massachusetts. Moreover, to the extent that the Plaintiff may argue that trial in Delaware would be more convenient for counsel, the Court only notes that this is not a factor courts generally consider in determining a motion to transfer. *See Magee*, 704 F.Supp. at 548 (citing *Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043, 1047 (3rd Cir.1973) (convenience of counsel not a factor to be considered in determining whether case should be transferred under 28 U.S.C. § 1404(a)).

## INTERESTS OF JUSTICE

 The criteria to be considered in the analysis of the interests of justice include the access to proof, cost to the parties, the availability of judicial process, the maintenance of sound judicial administration and the proper conservation of judicial resources.

---

5. This number takes into account the three Deloitte & Touche mentioned in the Defendants' opening brief. *See supra* note 3.

6. The Defendants assert that for the New York witnesses, travel time to Boston would be less. According to the Defendants, air travel time from New York to Boston is approximately one hour.

Train travel time from New York to Wilmington is approximately one and one-half hours. Since the Defendants have neglected to include travel time to and from the airports and train stations, the Court is not entirely convinced of the Defendants' assertion.

In this case, all of these factors militate in favor of transfer.

First, if this action remains in Delaware through trial, nine of the eighteen potential non-party witnesses and nine of the twelve individual defendants, if they attended any portion of the trial, would incur travel and accommodation expenses that would be unnecessary were the trial in Massachusetts. Similarly, travel expenses for the Plaintiff to attend trial would no doubt be less if the action were transferred to Massachusetts. The Plaintiff does not dispute the potential cost savings attendant with a transfer of the action. *See generally* D.I. 15.

■ Second, compulsory process would be available over a greater number of potential witnesses in Massachusetts than in Delaware. This Court would have subpoena power over only five of the potential non-party witnesses identified in the various documents. *See* Federal Rule of Civil Procedure 45(e)(1) (subpoena power without the district extends to 100 miles from place of hearing or trial); D.I. 16, ¶ 4 (distance from Lebanon, New Jersey, to Wilmington is 94 miles; less as the crow flies); *Id.*, ¶ 2a (distance from Philadelphia to Wilmington is less than 100 miles). Conversely, the Massachusetts court would have subpoena power over nine of the eighteen non-party witnesses. Four are not subject to process in either court. The Plaintiff insists that the witness from Evan Associates, at least, is a critical witness. D.I. 15 at 5. Although the availability of compulsory process is important, it is only one factor in the analysis of a transfer motion. The Plaintiff has identified only two non-party witnesses by name—Messrs. Yount and Belt. *See generally* D.I. 16. The Defendants, however, have identified many more, many of whom are within the subpoena pow-

er of the Massachusetts court. *Cf. Bergman v. Brainin*, 512 F.Supp. 972, 974 (D.Del.1981) (plaintiff's one critical witness stands alone against defendant's ten identified witnesses). Many of the Massachusetts witnesses are employees of the Defendant. This may in fact mean that the Defendant, AET, can compel their attendance at trial without the Court's assistance. Nevertheless, the Court finds that the interests of justice would be better served by transferring the action to the District of Massachusetts where their attendance could be assured, not merely presumed. *Cf. Magee*, 704 F.Supp. at 550.

## ACCESS TO PROOF AND CONSERVATION OF JUDICIAL RESOURCES

■ As already noted, although some records are available in Delaware, *all* records except the correspondence files of Messrs. Edge and Wyss and Ms. Cassidy are located in Massachusetts. Moreover, the AET strong net plant, about which the Plaintiff alleges the Defendants made material misstatements, is located in Massachusetts. The Plaintiff has indicated that he will take depositions in Massachusetts. D.I. 15 at 11. Since most evidence is present within the District of Massachusetts, judicial resources could be conserved by transfer of the action to that district. The Massachusetts court would be responsible for any subpoenas for depositions of nonparty witnesses and documents in the hands of third parties. Moreover, the Massachusetts District Court would be in a better position to supervise any viewing of the AET strong net site. *Kirschner*, 697 F.Supp. at 808 (same court could hold trial and oversee the most important aspects of discovery). This Court will, of course, oversee discovery, if any, that occurs in this District.[7]

Finally, the Court dismisses the Plaintiff's argument that the relative calendar conges-

---

7. The Plaintiff asserts that other litigation styled *Leucadia Inc. v. Applied Extrusion Technologies, Inc.*, Civil action No. 90–681–JLL (D.Del.), is relevant to this action. Specifically, the Plaintiff asserts that the settlement of the *Leucadia* action imposed limitations on AET's use of technology and that the *Leucadia* action, *inter alia*, affected AET's productivity. It appears that the Plaintiff wishes to review the settlement agreement in that action. D.I. 15 at 15. The Plaintiff previously moved to intervene in the *Leucadia* action and to modify a protective order in that case.

Burstein sought "to obtain and examine all papers and documents filed under seal ... to take discovery of others currently bound by the protective order, and to use the documents examined in the course of the securities action [before Judge Longobardi]." Order Denying Intervention to Modify Protective Order and Discovery, *Leucadia Inc. v. Applied Extrusion Technologies, Inc.*, Civil Action No. 90–681–JLL (June 29, 1992). Judge Latchum denied the motion on two different grounds: (1) that the ruling of this Court staying discovery in the *Burstein v. Applied*

tion in this District versus the District of Massachusetts supports retention of this action. The statistics submitted by the Plaintiff indicate that Massachusetts has an average of 621 cases per judgeship, a median disposition time of 11 months without trial, 22 months to trial·and that 30.5% of its cases are more than three years old. The statistics in the District of Delaware indicate that there are an average of 292 cases per judgeship, median disposition time of 10 months without trial, 20 months to trial and that 8.6% of its cases are more than three years old. The disparity in time for disposition is minimal. At any rate, a "backlog of cases in insufficient to prevent a § 1404(a) transfer which is otherwise mandated by the convenience of the parties and witnesses." *Minstar*, 626 F.Supp. at 148. *See also Hall*, 396 F.Supp. at 264 ("mere possibility of reaching trial in shorter space of time in Delaware ... does not justify the denial of a transfer motion which is otherwise called for under the standards of § 1404(a)").

In conclusion, the Court finds that all factors weigh in favor of transferring this action to the United States District Court for the District of Massachusetts.

*Extrusion Technologies, Inc.* action should not be ignored; and (2) that Burstein has not shown sufficient reason to discover the documents under seal in the *Leucadia* action given Leucadia's concern about the confidentiality of such documents. This Court, similarly, will not ignore Judge Latchum's order.